COLLOTON, Circuit Judge,
concurring.
I agree with the court that a guarantor is not an “applicant” within the meaning of 15 U.S.C. § 1691(a). The Federal Reserve Board thus exceeded its authority when it purported to redefine “applicant” in 12 C.F.R. § 202.2(e) to include “guarantors” for purposes of rules relating to when a creditor may require the signature of a spouse or other person on a credit instrument. I add these further reasons for joining the judgment of the court.
The Equal Credit Opportunity Act defines “applicant,” in relevant part, as “any person who applies to a creditor ... for ... credit.” 15 U.S.C. § 1691a(b). The ordinary meaning of “to apply,” as understood at the time of the statute’s enactment in 1974 and significant amendment in 1976, is “to make an appeal or a request ... usu[ally] for something of benefit to oneself ... <~to a bank for a loan>.” Webster’s Third New International Dictionary 105 (1971) (emphasis added). Under that usual meaning, an “applicant” who “applies for credit” is one who requests credit to benefit herself, not credit to benefit a third party. That there are unusual meanings of “apply” that encompass making a request on behalf of another is not sufficient to make a term ambiguous for purposes of Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Analysis under the first step of Chevron to determine whether the statutory text is unambiguous begins with ordinary meaning. Carcieri v. Salazar, 555 U.S. 379, 388, 129 S.Ct. 1058, 172 L.Ed.2d 791 (2009).
The context of the ECOA confirms that Congress employed the ordinary meaning of “apply” in the phrase “applies for credit.” The statute contemplates a first-party applicant who requests credit to benefit herself. Section 1691(d)(1) directs that within thirty days “after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application.” (emphasis added). The statute’s use of the definite article shows that the applicant is the single person to whom credit would be extended, not a third party asking on behalf of the putative debtor. See also S.Rep. No. 94-589, at 7-10 (1976), 1976 U.S.C.C.A.N. 403. Similarly, the statute as amended in 1991 refers to a creditor taking action in connection with “the applicant’s application for a loan,” 15 U.S.C. § 1691(e)(1), and it would *944 be unnatural to conclude that a third party who offers a promise in support of an application thereby submits what the statute describes as an “application for a loan,” id., and a “completed application for credit,” id. § 1691(d)(1).
The statute defines “adverse action” on a credit application, but excludes from that phrase “a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default.” 15 U.S.C. § 1691(d)(6) (emphasis added). This provision confirms that “the applicant” is the person to whom credit is extended and who is responsible for making payments on an existing loan. A guarantor or other third-party requestor does not in ordinary usage become “delinquent” or “in default” on a loan or other existing credit arrangement. But if a guarantor could be an “applicant,” then the creditor’s refusal to extend additional credit to a delinquent borrower would be an “adverse action” on the guarantor’s “application,” thus entitling the third-party guarantor to a statement of reasons that the creditor need not furnish to the first-party applicant. Id. § 1691(d)(2). This is not a natural reading of the text.
The statute specifically envisions the involvement of a third party who requests an extension of credit to a first-party applicant, but distinguishes between the third-party requestor and the “applicant”: “Where a creditor has been requested by a third party to make a specific extension of credit directly or indirectly to an applicant, the notification and statement of reasons required by this subsection may be made directly by such creditor, or indirectly through the third party, provided in either case that the identity of the creditor is disclosed.” Id. § 1691(d)(4) (emphases added). Again, the statutory text confirms that the “applicant” is the party to whom credit will be extended. When ordinary meaning aligns with the natural reading of a term in the context of a statute, there is no ambiguity that gives an agency license to adopt an alternative definition. Carcieri, 555 U.S. at 388-90, 129 S.Ct. 1058.
The regulators seemed to recognize the plain meaning of “applicant” in the first decade after the ECOA was enacted. The Board solicited comment in 1976 about the meaning of “applicant,” Equal Credit Opportunity, 41 Fed.Reg. 29,870, 29,871 (proposed July 20, 1976), but “to resolve confusion about the scope of this term,” the Board specifically provided that “a guarantor, surety, endorser, or similar party” is not an applicant. Equal Credit Opportunity, 41 Fed.Reg. 49,128, 49,124, 49,132 (proposed Nov. 8,1976). As the Board acknowledged, the unadorned statutory definition of “applicant” was sufficient to forbid a creditor to require the signature of a guarantor on a discriminatory basis. Id. at 49,124. If a creditworthy married person applies for credit, and the creditor demands based solely on marital status that her or his spouse sign a guaranty as a condition of extending credit, then the creditor has violated the statute and regulations, and the married applicant has a cause of action against the creditor as an “aggrieved applicant.” 15 U.S.C. § 1691e(a).
The Board’s effort to “redefine ‘applicant’ ... to include guarantors” apparently was motivated by dissatisfaction with Congress’s decision to limit the cause of action under the ECOA to an “aggrieved applicant.” See Equal Credit Opportunity; Revision of Regulation B; Official Staff Commentary, 50 Fed.Reg. 10,890, 10,891, 10,896 (proposed Mar. 18, 1985). The regulators observed that if a creditor illegally required a spouse to sign a guaranty as a condition of extending credit to an applicant, then only the applicant — not *945 the guarantor — had standing to sue as an “aggrieved applicant.” Id. at 10,891; see also Equal Credit Opportunity; Revision of Regulation B; Official Staff Commentary, 50 Fed.Reg. 48,018, 48,020 (Nov. 20, 1985). The redefinition of “applicant” in 12 C.F.R. § 202.2(e) to include “guarantors” was designed to give guarantors independent standing to sue. The Board believed that allowing guarantors to bring suit would have the effect of “enhancing protections,” although the Board also thought “guarantors, if they have standing to sue, would merely join in the lawsuit” brought by “applicants” in the normal case. 50 Fed.Reg. at 48,025.
Whatever might be the salutary effects of the change in policy, it was not a choice for the Board to make. Congress opted to limit the cause of action to an “aggrieved applicant,” and the statute gave “applicant” its ordinary meaning of one who applies for credit to benefit oneself. Any decision to expand the civil liability of creditors and to provide a cause of action for guarantors must come from Congress.